2017R00840

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 17- |
| | : | |
| v. | : | Hon. John Michael Vazquez |
| | : | |
| STEVEN M. BUTCHER | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 371 |

## I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment,

the Acting United States Attorney for the District of New Jersey charges that:

1. At all times relevant to this Information:

### MedMax, LLC

a. MedMax, LLC ("MedMax"), a New York company owned and

operated by defendant STEVEN M. BUTCHER, was a company involved in the

marketing and sales of prescription compounded medications, such as various

scar creams, pain creams, and metabolic supplements.

b. Through MedMax, defendant STEVEN M. BUTCHER and others

targeted individuals with health insurance plans, both federally-funded and

private, that paid for prescription compounded medications (the "paying health

plans") and convinced these individuals to obtain prescription compounded

medications through their health insurance plan regardless of medical

necessity. For instance, TRICARE and the health insurance plan of a New

Jersey pharmaceutical company were paying health plans and, therefore,

targeted by MedMax and others.

## **Compounding**

c.  "Compounding" is a practice in which a licensed pharmacist, or a licensed physician, combines, mixes or alters ingredients of a drug to create a medication tailored to the needs of an individual patient. Pharmacies engaging in the practice are referred to as "compounding pharmacies."

d.  Compounded drugs are not approved by the Food and Drug Administration ("FDA"), that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

e.  Generally, compounded drugs are prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared by a compounding pharmacy excluding the substance that triggers the allergic reaction. Compounded drugs also are prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

## **TRICARE**

f.  TRICARE is a health care program of the United States Department of Defense ("DoD") Military Health System that provides coverage for DoD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors. Individuals who receive health care benefits through TRICARE are referred to as TRICARE

2

beneficiaries. The Defense Health Agency ("DHA"), an agency of the DoD, is the military entity responsible for overseeing and administering the TRICARE program.

g. TRICARE is a "health care benefit program," as defined by Title 18 United States Code § 24(b), and a "Federal health care program," as defined by Title 42 United States Code § 1320a-7b(f), that affects commerce.

h. A pharmacy benefits administrator ("Pharmacy Benefits Administrator") is a pharmacy benefit manager who administers TRICARE's prescription drug benefits.

i. TRICARE beneficiaries can fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. If a TRICARE beneficiary choses a network pharmacy, the pharmacy collects any applicable copay from the TRICARE beneficiary, dispenses the drug to the beneficiary, and submits a claim for reimbursement to the Pharmacy Benefits Administrator, which, in turn, adjudicates the claim and reimburses the pharmacy on behalf of TRICARE. To become a network pharmacy, a pharmacy agrees to be bound by and comply with all applicable State and Federal laws, including those addressing fraud, waste, and abuse.

j. During all times relevant to this Information, TRICARE provided coverage for certain compounded drugs on the condition that they were medically necessary and prescribed by a licensed physician.

## The New Jersey Pharmaceutical Company

k.  A pharmaceutical company ("Pharmaceutical Company") located in New Jersey had a wholly self-funded health insurance plan for its employees (the "Pharmaceutical Company's health insurance plan"). Individuals who received health care benefits through the Pharmaceutical Company's health insurance plan were referred to as the Pharmaceutical Company's beneficiaries. The Pharmaceutical Company's prescription drug benefit plan was also administered by the Pharmacy Benefits Administrator. Under the agreement between the Pharmaceutical Company and the Pharmacy Benefits Administrator, the Pharmacy Benefits Administrator processed pharmaceutical claims for the Pharmaceutical Company's beneficiaries through a network of retail pharmacies, among other places.

l.  If a Pharmaceutical Company beneficiary selected a network pharmacy, the pharmacy collected any applicable copay from the beneficiary, dispensed the drug to the beneficiary, and submitted a claim for reimbursement to the Pharmacy Benefits Administrator, which would in turn adjudicate the claim and reimburse the pharmacy. At the end of each month, the Pharmaceutical Company reimbursed the Pharmacy Benefits Administrator for all expenditures made on behalf of the Pharmaceutical Company's beneficiaries.

m. The Pharmaceutical Company's health insurance plan was a "health care benefit program," as defined by 18 U.S.C. § 24(b), that affected commerce.

4

n. During all times relevant to this Information, the Pharmaceutical Company's health insurance plan provided coverage for certain compounded drugs that were medically necessary and prescribed by a licensed physician.

### Co-conspirators

o. Company A, located in California, was a "billing and distribution" company that contracted with various compounding pharmacies and marketing companies. Company A would receive prescriptions for compounded medications from various marketing companies, such as MedMax, and distribute the prescriptions to the appropriate compounding pharmacy in its network and submit a claim to the health insurance plan on behalf of that pharmacy.  Company A and the marketing companies, such as MedMax, received an agreed upon percentage of the reimbursement amount received by the compounding pharmacies for every successfully adjudicated claim.

a. Peter Pappas ("Pappas"), a resident of Pennsylvania, was recruited by defendant STEVEN M. BUTCHER to be a sales representative for MedMax. Pappas was a Pharmaceutical Company employee and was a Pharmaceutical Company beneficiary.

b. Julie Andresen ("Andresen"), a resident of New Jersey, was recruited by Pappas to become a sales representative for MedMax. Andresen was a Pharmaceutical Company employee and Andresen and her family were Pharmaceutical Company beneficiaries.

c. Jason Cerge ("Cerge"), a resident of Pennsylvania, was recruited by Pappas to become a sales representative for MedMax.

d. CC-1, a resident of New Jersey, was recruited by Cerge to become a sales representative for MedMax.

e. CC-2, a resident of New York, was recruited by defendant STEVEN M. BUTCHER to become a sales representative for MedMax.

f. CC-3, a resident of Georgia, was a member of the United States armed forces and a TRICARE beneficiary.

## The Scheme

2.  It was part of the scheme that defendant STEVEN M. BUTCHER, through his company MedMax, recruited individuals to become "sales representatives" of MedMax whose job was to cause the filling and billing of compounded medications regardless of medical necessity.

3.  It was further part of the scheme that defendant STEVEN M. BUTCHER directed MedMax sales representatives to target beneficiaries of paying health plans because only those plans covered compounded medications. For example, defendant STEVEN M. BUTCHER directed MedMax sales representatives to target TRICARE beneficiaries and Pharmaceutical Company beneficiaries because they were paying health plans.

4.  To encourage the billing of compounded medications regardless of medical necessity, defendant STEVEN M. BUTCHER shared a portion of the reimbursement payment he received with MedMax sales representatives. Specifically, defendant STEVEN M. BUTCHER paid sales representatives a percentage of the reimbursement payment received for each medically unnecessary compounded medication sales representatives obtained for

6

themselves ("self-prescriptions"), family members ("family prescriptions"), and/or others.

5.     To encourage MedMax sales representatives to recruit others, defendant STEVEN M. BUTCHER also paid a sales representative a portion of the reimbursement amount received for each prescription attributable to those the sales representative recruited.

6.     It was further part of the scheme that defendant STEVEN M. BUTCHER and MedMax sales representatives took advantage of relationships they had with physicians and/or other health care professionals, such as physician assistants.  Relying on these relationships, defendant STEVEN M. BUTCHER and MedMax sales representatives had physicians or other health care professionals authorize medically unnecessary compounded medications.

7.     Physician-1, a physician practicing medicine in New Jersey, authorized medically unnecessary prescriptions for compounded medications for TRICARE beneficiaries targeted by CC-1 as a favor to and based on Cerge's request.

8.     Physician-2, a physician practicing medicine in New Jersey, authorized medically unnecessary prescriptions for compounded medications for Andresen and a family member as a favor to and based on Andresen's request.

9.     Physician Assistant-1, a physician assistant residing and practicing medicine in New York, authorized medically unnecessary prescriptions for compounded medications for TRICARE beneficiaries targeted

by CC-2, among others, as a favor to and based on defendant STEVEN M.
BUTCHER's request.

10.     It was further part of the scheme that once defendant STEVEN M.
BUTCHER or a MedMax sales representative obtained a prescription for
compounded medications, including medically unnecessary prescriptions,
defendant STEVEN M. BUTCHER directed that these prescriptions be filled by
certain compounding pharmacies associated with Company A and/or other
"billing and distribution" companies (the "Pharmacies").

11.     It was further part of the scheme that for every prescription for
compounded medication defendant STEVEN M. BUTCHER directed to the
Pharmacies, including those that were medically unnecessary, the Pharmacies
filled the prescription and a claim would be submitted to the patient's health
insurance plan, such as TRICARE, for reimbursement. If the claim was
adjudicated successfully, defendant STEVEN M. BUTCHER was paid between
approximately 40% and 53% percent of the reimbursement amount (which
varied between approximately $3,000 and $43,000 per prescription) paid by
the health insurance plan.

12.     With defendant STEVEN M. BUTCHER'S knowledge and consent,
Pappas obtained medically unnecessary self-prescriptions through the
Pharmaceutical Company's health insurance plan and recruited several
individuals, including Andresen and Cerge, to become MedMax sales
representatives. Defendant STEVEN M. BUTCHER paid Pappas a percentage of
the reimbursement amount received for each medically unnecessary self-

prescription and/or family prescription Pappas obtained and for each medically unnecessary prescription Andresen, Cerge, and others, such as CC-1, caused to be billed to paying health plans.

13.     It was further part of the scheme that Andresen requested that Physician-2 authorize medically unnecessary prescriptions for herself and a family member. As a favor to Andresen, Physician-2 complied, which allowed Andresen to obtain medically unnecessary self-prescriptions and family prescriptions through the Pharmaceutical Company's health insurance plan. In exchange for her efforts, defendant STEVEN M. BUTCHER paid Andresen for the obtaining of these medically unnecessary compounded medications.

14.     It was further part of the scheme that CC-1 paid TRICARE beneficiaries residing in New Jersey, Colorado, and elsewhere to obtain medically unnecessary compounded medications through TRICARE ("CC-1's TRICARE beneficiaries"). Specifically, Physician-1, as a favor to Cerge and based on Cerge's request, authorized medically unnecessary prescriptions for compounded medications for CC-1's TRICARE beneficiaries, which effectively allowed the Pharmacies to bill TRICARE for the filling of medically unnecessary compounded medications.

15.     Defendant STEVEN M. BUTCHER forwarded the medically unnecessary prescriptions for CC-1's TRICARE beneficiaries to Company A knowing that TRICARE would be billed for the filling of medically unnecessary prescriptions. In exchange for the CC-1's efforts, defendant STEVEN M.

9

BUTCHER paid CC-1, Cerge, and Pappas for the filling and billing of these medically unnecessary compounded medications.

16.    It was further part of the scheme that CC-2 not only obtained medically unnecessary self-prescriptions, but also recruited others, including two TRICARE beneficiaries ("CC-2's TRICARE beneficiaries"), to obtain medically unnecessary compounded medications.

17.    It was further part of the scheme that defendant STEPHEN M. BUTCHER, relying on his relationship with Physician Assistant-1 and knowing that Physician Assistant-1 would not make a determination based on medical necessity, asked Physician Assistant-1 to authorize compounded medications for CC-2's TRICARE beneficiaries. Indeed, as a favor to defendant STEPHEN M. BUTCHER, Physician Assistant-1 authorized prescriptions for CC-2's TRICARE beneficiaries, among others, without assessing medical necessity, which effectively allowed the Pharmacies to bill TRICARE and other private insurance plans for the filling of medically unnecessary compounded medications.

18.    Defendant STEPHEN M. BUTCHER did cause medically unnecessary prescriptions for CC-2's TRICARE beneficiaries, authorized by Physician Assistant-1, to be billed to TRICARE. In exchange for CC-2's efforts, defendant STEVEN M. BUTCHER paid CC-2 for the filling and billing of these medically unnecessary compounded medications.

19.    To encourage TRICARE beneficiaries to obtain medically unnecessary compounded medications, defendant STEVEN M. BUTCHER knowingly paid TRICARE beneficiaries for the obtaining of medically

unnecessary self-prescriptions. For example, defendant STEVEN M. BUTCHER paid CC-3 for medically unnecessary self-prescriptions CC-3 obtained through TRICARE.

20. As a result of the scheme, from at least in or around July 2014 through in or around April 2016, defendant STEVEN M. BUTCHER caused a total loss to health insurance plans, both federally-funded and private, of more than $45 million. Further, defendant STEVEN M. BUTCHER personally made approximately $4.5 million from the scheme.

## COUNT ONE
(Conspiracy to Commit Health Care Fraud)

Paragraphs 1 through 20 are re-alleged as if fully set forth herein.

21. From as early as in or around July 2014 through in or around April 2016, in the District of New Jersey and elsewhere, defendant

STEVEN M. BUTCHER

did knowingly and intentionally conspire with others to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, or under the custody or control of, a health care benefit program in connection with the delivery of or payment for health care benefits, items or services, contrary to Title 18, United States Code, Section 1347, in violation of Title 18, United States Code, Section 1349.

11

## COUNT TWO

(Conspiracy to Violate the Anti-Kickback Statute)

Paragraphs 1 through 20 are re-alleged as if fully set forth herein.

22.     From as early as in or around December 2014 through in or around June 2015, in the District of New Jersey, and elsewhere, defendant

STEVEN M. BUTCHER

did knowingly and intentionally conspire and agree with others to commit offenses against the United States, that is, to knowingly and willfully offer and pay remunerations, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to individuals in order to induce those individuals to obtain prescriptions for compounded medications and refer those prescriptions to certain compounding pharmacies for the furnishing of items and services, that is, the obtaining of medically unnecessary compounded medications, for which payment was made in whole or in part under a Federal health care program, namely, TRICARE, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

### Object of the Conspiracy

23.     It was an object of the conspiracy for defendant STEVEN M. BUTCHER and others to unlawfully enrich themselves by offering and paying money to induce individuals to cause the billing of medically unnecessary compounded medications to TRICARE through certain compounding pharmacies.

12

## Manner and Means of the Conspiracy

The manner and means by which defendant STEVEN M. BUTCHER and others sought to accomplish the object of the scheme included, among other things, the following:

24.    As described in paragraphs 4, 5, and 10 through 18, to encourage the filling and billing of medically unnecessary compounded medications to TRICARE, as well as private health plans, defendant STEVEN M. BUTCHER paid MedMax sales representatives for their efforts in the attainment of such medically unnecessary compounded prescriptions.

25.    As described in paragraphs 14 and 19, to encourage the filling and billing of medically unnecessary compounded medications to TRICARE, as well as private health plans, defendant STEVEN M. BUTCHER and MedMax sales representatives, such as CC-1, paid TRICARE beneficiaries to obtain medically unnecessary compounded prescriptions.

26.    It was further part of the conspiracy that defendant STEVEN M. BUTCHER knowingly and willfully paid individuals over $1 million in kickbacks for the obtaining of medically unnecessary prescriptions for compounded medications and referral of these prescriptions to the Pharmacies, which were billed to and paid by TRICARE. This resulted in the payment of at least $3 million by TRICARE for such prescriptions.

13

Overt Acts

In furtherance of the conspiracy, and in order to effect the object thereof, defendant STEVEN M. BUTCHER and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

27.    On or about February 11, 2015, defendant STEVEN M. BUTCHER paid CC-2 approximately $8,406 for CC-2's efforts in causing the filling and billing of medically unnecessary prescriptions for compounded medications, including those billed to and paid for by TRICARE.

28.    On or about May 18, 2015, defendant STEVEN M. BUTCHER paid CC-2 approximately $17,289 for CC-2's efforts in causing the filling and billing of medically unnecessary prescriptions for compounded medications, including those billed to and paid for by TRICARE.

29.    On or about February 18, 2015, defendant STEVEN M. BUTCHER emailed medically unnecessary prescriptions for compounded medications for CC-1's TRICARE beneficiaries residing in New Jersey and elsewhere, which were authorized by Physician-1, to Company A knowing that TRICARE would be billed for the filling of these medically unnecessary compounded medications.

30.    On or about March 17, 2015, defendant STEVEN M. BUTCHER paid Cerge approximately $3,952 for CC-1's efforts in causing the filling and billing of medically unnecessary prescriptions for compounded medications, which were billed to and paid for by TRICARE.

14

31.    On or about March 17, 2015, defendant STEVEN M. BUTCHER paid CC-1 approximately $11,964 for CC-1's efforts in causing the filling and billing of medically unnecessary prescriptions for compounded medications, which were billed to and paid for by TRICARE.

32.    On or about April 17, 2015 defendant STEVEN M. BUTCHER paid Cerge approximately $8,863 for CC-1's efforts in causing the filling and billing of medically unnecessary prescriptions for compounded medications, which were billed to and paid for by TRICARE.

33.    On or about April 20, 2015, defendant STEVEN M. BUTCHER paid CC-1 approximately $27,464 for CC-1's efforts in causing the filling and billing of medically unnecessary prescriptions for compounded medications, billed to and paid for by TRICARE.

All in violation of Title 18, United States Code, Section 371.

**FORFEITURE ALLEGATION**

1.      Upon conviction of one or both of the conspiracies to commit a

Federal health care offense (as defined in 18 U.S.C. § 24) alleged in Counts One

and Two of this Information, defendant STEVEN  M. BUTCHER shall forfeit to

the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or

personal, obtained by the defendant that constitutes or is derived, directly and

indirectly, from gross proceeds traceable to the commission of such offenses,

the total value of which totaled $4,584,597.92, and which includes, but is not

limited to, all right, title, and interest of the defendant in the following:

        a. $688,789.35 IN FUNDS FROM
           ACCOUNT # ECJ-038610 IN THE
           NAME OF STEVEN BUTCHER AT
           FIDELITY INVESTMENTS;

        b. $231,526.14 IN FUNDS FROM
           ACCOUNT # 0095-2537-8779 HELD
           IN THE NAME OF STEVEN M. BUTCHER
           AND JILL L. BUTCHER AT BANK OF AMERICA;

        c. $147,073.11 IN FUNDS FROM ACCOUNT
           # 4830-4920-3715 HELD IN THE NAME OF
           MEDMAX, LLC AT BANK OF AMERICA;

        d. $89,876.17 IN FUNDS FROM ACCOUNT
           # EBU-038192 IN THE NAME OF STEVEN
           BUTCHER AT FIDELITY INVESTMENTS;

        e. $5,023.08 IN FUNDS FROM ACCOUNT
           # 4830-4847-0837 HELD IN THE NAME
           OF STEVEN M. BUTCHER AND JILL L.
           BUTCHER AT BANK OF AMERICA; and

    f.   $570,322.50 IN FUNDS FROM
          COUNSEL FINANCIAL HOLDINGS
          ACCOUNT N/P#2077 IN THE NAME
          OF STEVEN BUTCHER.

<u>Substitute Assets Provision</u>

2.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any property of said defendant up to the value of the forfeitable property described above.

CRAIG CARPENITO
United States Attorney

CASE NUMBER: 18-

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

STEVEN M. BUTCHER

# INFORMATION FOR

18 U.S.C. § 1349
18 U.S.C. § 371

CRAIG CARPENITO
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

ERICA LIU
*ASSISTANT U.S. ATTORNEY*
*(973) 645-3989*

USA-48AD 8
(Ed. 1/97)